UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA LLC, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:19-cv-02314 |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| JEFFREY DUNCAN, | § | |
| Defendant. | § | |

**OPINION ON DISMISSAL WITHOUT PREJUDICE**

The Court has entered an order granting a motion by Defendant Jeffrey Duncan to dismiss the complaint against him because it failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Dkt 38. This opinion sets out the reasons supporting that order.

The Court's opinion and order are without prejudice to the ability of Plaintiff Malibu Media LLC to replead its claim for copyright infringement if believed in good faith that it can cure its pleading deficiencies.

1. Background

Malibu Media does not describe itself and its business in its amended complaint. Abundant cases establish that it is a producer and distributor of adult videos. For example, see *Malibu Media LLC v Escobar*, 2019 WL 1003391, *1 (SD Tex). Its amended complaint states a single claim alleging that Duncan violated copyright protection on certain of its videos. Dkt 11 at ¶¶ 28–33.

Malibu Media accuses quite broadly that Duncan "is a persistent online infringer of Plaintiff's copyrights." Dkt 11 at ¶ 2. Malibu Media alleges that he used a BitTorrent file distribution network to infringe its copyrights. It describes that network as "one of the most common peer-to-peer file sharing

systems used for distributing large amounts of data, including, but not limited to, digital movie files." Dkt 11 at ¶ 10.

Malibu Media asserts that it used an investigator, IPP International UG, who "established a direct TCP/IP connection with the Defendant's IP address." Id at ¶ 17. After doing so, the investigator then allegedly "downloaded from Defendant one or more pieces of each of the digital media files" associated with six of its videos. Id at ¶ 18.

Malibu Media originally brought this action not against Duncan, but against "John Doe subscriber assigned IP address 72.183.55.254." Dkt 1. At that time, it alleged, "Plaintiff only knows Defendant by his, her or its IP Address." Id at ¶ 9. And it alleged, "Defendant's Internet Service Provider can identify the Defendant." Id at ¶ 10. Malibu Media moved for discovery to determine the owner of the IP address. Dkt 6. This was allowed. Dkt 8. Malibu Media then amended its complaint to name Duncan specifically. Dkt 11.

To be clear, Malibu Media alleges only that its investigator "connected, over a course of time, with the Defendant's IP address." Id at ¶ 24; see also id at ¶ 17. It does not allege that anyone ever spoke with or contacted Duncan personally. Nor that its investigator observed Duncan himself engaging in infringing conduct. Nor even that Duncan has exclusive access to the specified IP address. But Malibu Media nonetheless avers that its investigation established that "Duncan"—himself, personally—"downloaded, copied, and distributed a complete copy of Plaintiff's works without authorization." Id at ¶ 23; see also id at ¶¶ 18, 30 (respectively alleging that "Plaintiff's investigator downloaded *from Defendant*" digital media files, and that "*Defendant* copied and distributed" elements of subject videos) (emphasis added).

Malibu Media concludes, "Defendant is a habitual and persistent BitTorrent user and copyright infringer." Id at ¶ 25. As its single cause of action, Malibu Media asserts direct infringement of copyright under 17 USC § 106 et seq. Dkt 11 at ¶¶ 28–33. Malibu Media states this cause of action specifically against Duncan, without further reference to an IP address.

## 2. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id at 678, quoting *Twombly*, 550 US at 556.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (citation omitted). And the court generally "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014) (citation omitted). "The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to

a plaintiff's claims." Ibid (citation omitted). The court may also consider "matters of which a court may take judicial notice." *Funk v Stryker Corp*, 631 F3d 777, 783 (5th Cir 2011) (citation omitted).

3. Analysis

Duncan's motion to dismiss is not expansive but asserts three bases for dismissal. These are, first, that Malibu Media is an abusive and harassing litigant; second, that its allegations concerning "geolocation technology" are conclusory and insufficient; and third, in any event, that an IP address alone is insufficient to identify a defendant for copyright infringement.

As to the first, the Court cannot properly address or resolve the assertion on motion under Rule 12(b)(6). As to the second and third, the Court agrees and dismisses the amended complaint without prejudice to Malibu Media repleading its claim if able to do so in good faith.

a. Malibu Media as an abusive litigant

Duncan's motion essentially complains that Malibu Media targets individual defendants for harassment based on conclusory allegation of connection to infringing conduct. He states that "courts have related plaintiff's actions to extortion," while noting that he is "disabled, retired and had a stroke." Dkt 17 at 3.

Malibu Media is a prolific litigant. One court recently observed that Malibu Media filed 7,183 cases nationally from 2012 to 2018. *Strike 3 Holdings LLC v Doe*, 351 F Supp 3d 160, 163 (DDC 2018). Separate academic research tabulated that Malibu Media filed 5,982 individual infringement cases between 2012 and 2016. Matthew Sag & Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling*, 103 Iowa L Rev 571, 580 (2018). Malibu Media's initiation of action versus an anonymous defendant is also not unusual for it. The same academic research found that Malibu Media accounted for nearly 62 percent of all *John Doe* cases filed during 2015 and 2016. Id at 578. The next five largest plaintiffs collectively made up only another 20 percent of such cases. Ibid.

These practices extend into the Southern District of Texas. At the Court's direction, Malibu Media filed a notice establishing that it currently has sixteen cases pending in this district. Dkt 24. The Court has examined these cases, and each is like the current suit. Court records also indicate that Malibu Media has filed at least 304 such suits in this district since 2016. None of these cases or any other filed by Malibu Media anywhere in the Fifth Circuit have ever reached that court for review.

Scholarly criticism has emerged of this litigation-as-a-business strategy under the copyright laws as pursued by Malibu Media and a few other reputed "copyright trolls." See Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L Rev 1105 (2015). Several recent cases have also condemned the litigation practices of Malibu Media and others like it. For instance, see *Malibu Media v Park*, 2019 WL 2960146, *3–4 (D NJ); *Strike 3 Holdings LLC v Doe*, 351 F Supp 3d at 161–162. Duncan is right that some courts liken this type of litigation under the copyright laws to "extortion." *Park*, 2019 WL 2960146 at *4, quoting *Strike 3 Holdings*, 351 F Supp 3d at 166; see also *Malibu Media LLC v John Does 1 through 10*, 2012 WL 5382304, *4 (CD Cal).

All of this presents a genuine concern. But the Court cannot properly address it on motion to dismiss under Rule 12(b)(6). The inquiry at present is generally limited to the face of the amended complaint and its attachments. Whether Malibu Media's broader litigation practices establish a defense or warrant imposition of sanctions are issues that require evidence developed in discovery.

If Malibu Media repleads and continues pursuit of this action, the Court will address Duncan's contentions when presented on an appropriate record.

> b. Malibu Media's reliance on "geolocation technology"

Malibu Media pleads its use of "geolocation technology" as the exclusive basis upon which it identified not Duncan, but rather, his IP address. Duncan challenges this as inaccurate. Dkt 17 at 2–3. The Court agrees and finds a speculative gap as to whether Malibu Media has plausibly identified an IP address associated with Duncan's physical address.

Recall that Malibu Media does not allege that it actually observed Duncan engaging in infringing acts. It alleges only that its technology identified an IP address "traced to a physical address located within this District." Dkt 11 at ¶ 5. Yet the amended complaint itself pleads the accuracy limits of this technology, and it inspires no confidence: "Based upon experience filing over 1,000 cases the geolocation technology used by Plaintiff has proven to be accurate *to the District level* in over 99% of the cases." Id at ¶ 6 (emphasis added).

This Court recently observed that the Southern District of Texas covers approximately one-fifth of the real estate in Texas, totaling more than 44,100 square miles. *Total Safety v Knox*, 2019 WL 7042114, *2 (SD Tex) (citation omitted). Spanning Houston down to the Rio Grande, this means literally millions of people live within this district. An allegation that technology *accurately* observed copyright infringement occurring somewhere amid 44,100 square miles and millions of people is insufficient to plausibly plead infringement by a specific person at a specific address. But based on pleading accuracy *to the District level*, that is all that Malibu Media has done.

On careful inspection, the amended complaint also contradicts any linkage between the geolocation technology, the allegedly infringing IP address, and Duncan's physical address. The amended complaint states that "Defendant's IP address as set forth on Exhibit A was used to illegally distribute" the allegedly infringed videos. Dkt 11 at ¶ 2. Exhibit A is a report or summary of the geolocation-technology investigation. It lists "IP Address 72.183.55.254" and states "Physical Location: Portland, TX." Dkt 11-1 at 1. But returning to the amended complaint, Malibu Media then pleads that Duncan resides at a street address in Rockport, Texas. Dkt 11 at ¶ 9.

The towns of Portland and Rockport are more than twenty miles apart in the Corpus Christi area. Nothing in the amended complaint explains their connection. Perhaps there is one, but that is a matter for potential repleading.

Given Malibu Media's current averment that its technology is only accurate *to the District level*, this unexplained contradiction

leaves it entirely speculative as to whether Malibu Media has pleaded any connection to Duncan—much less a still-insufficient possible one, and far from the requisite plausible one.

The Court grants Duncan's motion to dismiss on this basis.

### c. Malibu Media's reliance on an IP address

Malibu Media alleges that its investigator observed infringing conduct on an IP address registered to Duncan. From this, it asks the Court to make the jump from Duncan as the *registered subscriber* of an IP address to Duncan as the *actual user* of that IP address at the times of which it complains. Duncan asserts to the contrary that "an IP address alone is insufficient to identify a defendant for copyright infringement." Dkt 17 at 3.

The question is whether the mere fact that a person pays for an IP address is enough to state a claim against that person for any and all infringing activity associated with that IP address. A division of opinion plainly exists on the issue.

The Court notes at the outset that Malibu Media cites three decisions in this district that have allowed its complaints to survive motion to dismiss. See Dkt 20 at 2, citing *Malibu Media LLC v Poropat*, 4:18-cv-02488 (SD Tex 2019), Dkt 42; *Malibu Media LLC v Subscriber 44244*, 4:19-cv-00514 (SD Tex 2019), Dkt 12; *Malibu Media LLC v John Doe, subscriber assigned IP address 98.199.103.171*, 4:18-cv-4787 (SD Tex 2019), Dkt 26. But these unpublished docket entries are simple orders of denial. They indicate neither the issues under review nor the reasons in support. They carry no persuasive weight.

Beyond this, Malibu Media cites a number of cases where courts have allowed its complaints to proceed. And the Court has identified other decisions holding more generally on this issue that identification of a defendant based solely on an infringing IP address is enough under Rule 12(b)(6). For instance, see *Countryman Nevada LLC v Pitts*, 2014 WL 7178077, *2 (MD Fla) (collecting eight cases). These cases typically agree "that subscriber identity does not always correspond with infringer identity." *Malibu Media LLC v John Does 1–11*, 2013 WL 3732839, *4 (SDNY). But they nonetheless conclude that the admitted

difficulty for plaintiff to later prove that the accused defendant was actually the one engaging in infringing conduct is a question of ultimate merits inappropriate to resolution on motion to dismiss. Ibid. In so concluding, these cases appear to improperly shift the burden in the first instance to the defendant, where the very question is the *plausibility* of the connection to liability, not its mere *possibility*, and where conclusory allegations of that liability are insufficient.

The Court finds that the growing weight of authority favors Duncan's contrary position. This includes the Ninth Circuit's recent decision in *Cobbler Nevada LLC v Gonzales*, 901 F3d 1142 (9th Cir 2018), the only appellate decision on point of which the Court is aware. Its reasoning is succinct:

> Although copyright owners can often trace infringement of copyrighted material to an IP address, it is not always easy to pinpoint the particular individual or device engaged in the infringement. Internet providers, such as Comcast or AT&T, can go so far as to identify the individual who is registered to a particular IP address (i.e., an account holder) and the physical address associated with the account, but that connection does not mean that the internet subscriber is also the infringer. The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address.

Id at 1146. The Ninth Circuit thus found it to be "a situation '[w]here a complaint pleads facts that are merely consistent with a defendant's liability, . . . stop[ping] short of the line between possibility and plausibility of entitlement to relief." Id at 1147, quoting *Iqbal*, 556 US at 678 (alterations in original).

Several district courts have since expressly applied this reasoning when dismissing complaints brought by Malibu Media that are similar—if not identical—to the one here. For instance, see *Malibu Media LLC v John Doe*, 2018 WL 6446404, *3 (ND Ill)

(granting motion to dismiss); *Park*, 2019 WL 2960146 at *6 (denying motion for default judgment); but see *Malibu Media v Palella*, 2019 WL 1584556 (ND Ill) (declining to follow *Cobbler Nevada*). Other courts have also either dismissed similar claims or otherwise indicated the inherent unreliability of identifying a person solely from an IP address. See *PTG Nevada LLC v Chan*, 2017 WL 168188, *2 (ND Ill) (granting motion to dismiss); *Elf-Man LLC v Cariveau*, 2014 WL 202096, *2 (WD Wash) (granting motion to dismiss); *AF Holdings LLC v Rogers*, 2013 WL 358292, *2 (SD Cal) (granting motion to dismiss); see also *Strike 3 Holdings LLC*, 351 F Supp 3d at 164 (denying request for early discovery); *Dallas Buyers Club LLC v Doughty*, 2016 WL 1690090, *11 (D Or) (denying motion for summary judgment); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 FRD 80, 84 (EDNY 2012) (resolving motions for early discovery and motions to quash).

The *BitTorrent Adult Film Copyright Infringement Cases* frames the best metaphor: "Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call." Ibid. And the decision underlying the Ninth Circuit's opinion best frames the inquiry against the requisite *Twombly/Iqbal* standard: "While it is *possible* that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct." *Cobbler Nevada LLC v Gonzales*, 2016 WL 3392368 (D Or) (emphasis in original), affirmed 901 F3d 1142 (9th Cir 2018).

The Supreme Court has held that the mere *possibility* that a defendant engaged in prohibited conduct is insufficient to state a claim: "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. Yet Malibu Media in its amended complaint simply converts from pleading that it observed conduct on an IP address to alleging that Duncan himself was the one doing so. Like the Supreme Court in *Iqbal*, this Court "do[es]

not reject these bald allegations on the ground that they are unrealistic or nonsensical." 556 US at 681. Instead, "[i]t is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." Ibid. Indeed, in both *Iqbal* and *Twombly*, the complaints failed in large measure because an "obvious alternative explanation" existed for the conduct at issue which was not ruled out by conclusory averments. Id at 682, quoting *Twombly*, 550 US at 567.

Malibu Media has not "nudged" its claims "across the line from conceivable to plausible." *Twombly*, 550 US at 570. It alleges no personal contact with or investigation of Duncan. And so the amended complaint contains no allegations that Duncan acknowledged personal involvement in any download or distribution, that he has exclusive access to his IP address, or "even circumstances which might increase the likelihood that the subscriber is the infringer (such as defendant's living arrangements or network details)." *Elf-Man LLC*, 2014 WL 202096 at *2. It thus remains just as possible that the IP address was used by family members, roommates, guests, friends, and neighbors. See Sag & Haskell, 103 Iowa L Rev at 590.

The Court grants Duncan's motion to dismiss on this additional basis.

4. Conclusion

The motion to dismiss is GRANTED.

The amended complaint against Jeffrey Duncan is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Signed on February 4, 2020 at Houston, Texas.

Hon. Charles Eskridge
United States District Judge